## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 1:21-cr-488 (CRC)** |
| | **:** | |
| **NOAH BACON,** | **:** | |
| | **:** | |
| **DEFENDANT.** | **:** | |

## GOVERNMENT MEMORANDUM IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS COUNT SIX OF THE INDICTMENT

The Court should deny Defendant Noah Bacon's ("Defendant") Motion to Dismiss Count Six of the Indictment, ECF No. 43 at 1-2, because the case he cites in support of the motion, *United States v. Miller,* 1:21-cr-119 (CJN), 2022 WL 823070 (D.D.C. Mar. 7, 2022)*, reconsideration denied,* 1:21-cr-119 (CJN), 2022 WL 1718984 (D.D.C. May 27, 2022), was wrongly decided and Defendant's conduct clearly violated Section 1512(c)(2).[1]

## RELEVANT PROCEDURAL HISTORY

On July 23, 2021, the Grand Jury issued an indictment that charged Defendant with violating 18 U.S.C. § 1752(a)(1) (Entering and Remaining in a Restricted  Building or Grounds)(Count One), 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds)(Count Two), 40 U.S.C. 5104(e)(2)(B) (Entering and Remaining in the Gallery of either House of Congress) (Count Three), 40 U.S.C. 5104(e)(2)(D)(Disorderly Conduct in a Capitol Building)(Count Four), 40 U.S.C. 5104(e)(2)(G)(Parading, Demonstrating, or Picketing in a Capitol Building)(Count Five), and 18 U.S.C. §§ 1512(c)(2), and 2 (Obstruction of

---

[1] Defendant also cites *United States v. Fischer*, 1:21-cr-234 (CJN), and *United States v. Lang*, 1:21-cr-53 (CJN) in support of his motion to dismiss.  The orders dismissing the Section 1512(c)(2) counts in *Fischer* and *Lang* were issued by the same judge in *Miller* and rely on the same reasoning.

an Official Proceeding and Aiding and Abetting Obstruction of an Official Proceeding)(Count Six).  ECF No. 6.  On July 27, 2022, Defendant filed a motion to dismiss Count Six, the obstruction of an official proceeding count, based on *United States v. Miller*, 1:21-cr-119 (CJN), 2022 WL 823070 (D.D.C. Mar. 7, 2022).  ECF No. 43.

## FACTUAL BACKGROUND

At 1:00 p.m., EST, on January 6, 2021, a Joint Session of the United States Congress convened in the United States Capitol building.  The Joint Session assembled to debate and certify the vote of the Electoral College of the 2020 Presidential Election.   With the Joint Session underway and with Vice President Mike Pence presiding, a large crowd gathered outside the U.S. Capitol.  As early as 12:50 p.m., certain individuals in the crowd forced their way through, up, and over erected barricades.  The crowd, having breached police officer lines, advanced to the exterior façade of the building.  Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol.  At approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to – and did – evacuate the chambers.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

An affidavit supporting the criminal complaint against Defendant partially describes his role in the January 6, 2021 attack on the Capitol. ECF 1-1.  Among other facts, the Statement of Facts alleges that on January 5, 2021, Defendant posted to his Instagram account a photograph of the Washington monument and associated text that read:

> I am in DC for Trump's special Jan 6th event. Extremely excited and hopeful for you to see why I am so excited. Clarity might not be arriving today or tomorrow, but I promise I do believe things are going beautifully (please turn off your tv) and we are on the precipice of something beautiful.

ECF No. 1-1 at 2.  Closed circuit camera footage establishes that on January 6, 2021, at 2:15 p.m., Defendant was among rioters who entered the U.S. Capitol through the Senate Wing door.  *See* Figure 1.



Figure 1 – Bacon entering the Senate Wing door (CCTV footage screen capture).

Defendant walked to the Crypt North area.  At approximately 2:17 p.m., Defendant was in the Crypt North area where he and others who unlawfully entered the Capitol encountered a line of law enforcement officers.  *See* Figure 2.



Figure 2 – Defendant in Crypt North (CCTV screen capture footage).

Approximately five minutes later, the crowd rushed forward and overwhelmed the officers attempting to prevent them from proceeding further inside the Capitol. ECF No. 1-1 at 5. Publicly available video and closed-circuit security footage establishes that Defendant also made his way to the Rotunda and outside the Rotunda near the East Rotunda door where he used a fallen yellow "Don't Tread on Me" flag to cover a security camera above the door for approximately 8 seconds and then shoved or attempted to jam the flag into the door frame to force the door open and allow other rioters to enter the Capitol. *See* ECF No. 1-1 at 5; *see also* Figures 3-4.



Figure 3 – Defendant in Rotunda (publicly available footage screen capture).



Figure 4 – Defendant at East Rotunda door (CCTV screen capture footage).

Defendant then left the East Rotunda door area and dashed up the staircase immediately behind him toward the third floor of the U.S. Capitol. ECF No. 1-1 at 5.  Closed-circuit camera footage establishes that Defendant was outside the Senate gallery when in his line-of-sight, officers attempted to secure multiple Senate gallery doors but were only able to secure one door before rioters attacked them and prevented them from securing the additional gallery doors.  ECF No. 1-1 at 5; *see also* Figures 5-6.



Figure 5 – Defendant watching as officers secure a Senate gallery entrance (CCTV screen capture footage).



Figure 6 – Rioters preventing law enforcement officers from securing a second Senate gallery entrance and entering an unlocked third entrance (CCTV screen capture footage).

Thereafter, Defendant and others entered the Senate gallery where he remained until he exited the gallery and then entered the Senate chamber where he sat for approximately 10 minutes before exiting the chamber and then the U.S. Capitol. *See* Figures 7-9; *see also* ECF No. 1-1 at 5.



Figure 7 – Defendant entering a Senate gallery entrance (CCTV screen capture footage).



Figure 8 – Defendant sitting in the U.S. Senate chamber (CSPAN footage screen capture).



Figure 9 – Defendant walking towards a U.S. Capitol exit (CCTV footage screen capture).

## **LEGAL STANDARD**

An indictment is sufficient under the Constitution and Rule 7 of the Federal Rules of Criminal Procedure if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," *Hamling v. United States*, 418 U.S. 87, 117 (1974), which may be accomplished, as it is here, by "echo[ing] the operative statutory text while also specifying the time and place of the offense." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018). "[T]he validity of an indictment 'is not a question of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)). And an indictment need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed." *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976).

Rule 12 permits a party to raise in a pretrial motion "any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1) (emphasis added). It follows that Rule 12 "does not explicitly authorize the pretrial dismissal of an indictment on

sufficiency-of-the-evidence grounds" unless the government "has made a full proffer of evidence" or the parties have agreed to a "stipulated record*," United States v. Yakou*, 428 F.3d 241, 246-47 (D.C. Cir. 2005) (emphasis added)—neither of which has occurred here.

Indeed, "[i]f contested facts surrounding the commission of the offense would be of any assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.). Criminal cases have no mechanism equivalent to the civil rule for summary judgment. *United States v. Bailey*, 444 U.S. 394, 413, n.9 (1980) (motions for summary judgment are creatures of civil, not criminal trials); *Yakou,* 428 F.2d at 246-47 ("There is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context"); *United States v. Oseguera Gonzalez*, No. 20-cr-40-BAH at *5, 2020 WL 6342940 (D.D.C. Oct. 29, 2020) (collecting cases explaining that there is no summary judgment procedure in criminal cases or one that permits pretrial determination of the sufficiency of the evidence). Accordingly, dismissal of a charge does not depend on forecasts of what the Government can prove. Instead, a criminal defendant may move for dismissal based on a defect in the indictment, such as a failure to state an offense. *United States v. Knowles*, 197 F. Supp. 3d 143, 148 (D.D.C. 2016). Whether an indictment fails to state an offense because an essential element is absent calls for a legal determination. Thus, when ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and more specifically, the language used to charge the crimes. *United States v. Bingert*,  1:21-cr-00091(RCL), ECF No. 67 at 5 (D.D.C. May 25, 2022) (a motion to dismiss challenges the adequacy of an indictment on its face and the relevant inquiry is whether its allegations permit a jury to find that the crimes charged were committed);  *United States v. McHugh*, 1:21-cr-453 (JDB), 2022 WL 1302880, at * 2 (D.D.C. May 2, 2022) (a motion to dismiss

involves the Court's determination of the legal sufficiency of the indictment, not the sufficiency of the evidence); *United States v. Puma*, 1:21-cr-454 (PLF), 2020 WL 823079 at *4 (D.D.C. Mar. 19, 2022) (quoting *United States v. Sunia*, 643 F.Supp. 2d 51, 60 (D.D.C. 2009)).

## ARGUMENT

**I.     COUNT SIX STATES AN OFFENSE; THE DEFENDANT'S ALLEGED CONDUCT CLEARLY VIOLATES SECTION 1512**

Relying on *Miller,* Defendant argues that under Rules 7(c)(1) and 12(b)(3)(B) of the Federal Rules of Criminal Procedure and the Fifth and Sixth Amendments to the United States Constitution, Count Six of the Indictment fails to state an offense because Defendant, like *Miller*, "is not alleged to have taken some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence an official proceeding."[2] ECF No. 43 at 2. This Court has already rejected this argument, *see United States v. Robertson*, 1:21-cr-34, 2022 WL 2438546, at *3-*5 (D.D.C. July 5, 2022), and Defendant provides no sound reason to depart from that conclusion in this case.

Count Six of the Indictment charges:

> On or about January 6, 2021, within the District of Columbia and elsewhere, **NOAH BACON** attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18.

**(Obstruction of an Official Proceeding and Aiding and Abetting**, in violation of Title 18, United States Code, Sections 1512(c)(2) and 2).

---

[2] The Orders dismissing the Section 1512(c)(2) counts in *Fischer* and *Lang* were issued by the judge in *Miller* and rely on the same reasoning. Upon the Government's motion to consolidate, the Court of Appeals consolidated *Miller, Fischer*, and *Lang*. *See* Order Granting Consolidation, ECF Document No. 1957284, *United States v. Miller*, No. 22-3041; *United States v. Lang*, No. 22-3039; *United States v. Fischer*, No. 22-3038 (D.C. Cir. Aug. 1, 2022).

ECF No. 6, Indictment.[3]

In 2002, Congress enacted Section 1512(c)'s prohibition on "[t]ampering with a record or otherwise impeding an official proceeding" as part of the Sarbanes-Oxley Act, Pub. L. No. 107-204, 116 Stat. 745, 807.  Section 1512(c)'s prohibition applies to:

[w]hoever corruptly—

(1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or

(2) *otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so.*

18 U.S.C. § 1512(c) (emphasis added).  Section 1515(a)(1), in turn, defines the phrase "official proceeding" to include "a proceeding before the Congress."  18 U.S.C. § 1515(a)(1)(B).  By the statute's plain terms, then, a person violates Section 1512(c)(2) when, acting with the requisite *mens rea*, he engages in conduct that obstructs a specific congressional proceeding, including, as here, Congress's certification of the Electoral College vote.

Notwithstanding the plain terms of the offense, Defendant, citing *Miller*, asserts in his motion that his alleged conduct does not qualify as conduct that "otherwise obstructs, influences, or impedes" the official proceeding as Section 1512(c)(2) is limited by Section 1512(c)(1), ECF No. 43 at 2.  Defendant's claim lacks merit.

Every reported court of appeals decision to have considered the scope of Section 1512(c)(2), and all but one of the judges of this Court (the "*Miller* Court") to have considered the issue in cases involving January 6, 2021, have concluded that Section 1512(c)(2) prohibits obstruction regardless of its connection to documentary or tangible evidence.  And, in any event,

---

[3] On June 1, 2022, the Grand Jury issued a superseding indictment which merely updated charging language in Count Two, 18 U.S.C. § 1752(a)(2).

even if a nexus to documentary or tangible evidence were required, the allegations in the Indictment, which track the statutory language, adequately inform Defendant about the charge against him; nothing more is required. *See, e.g., United States v. Williamson*, 903 F.3d 124, 130-131 (D.C. Cir. 2018).

### A.    Section 1512(c)(2) Applies to the Conduct Alleged in the Indictment.

Defendant's argument relies upon the Court's decision in *Miller* and contends that Defendant's conduct, like that of *Miller*, fails to fit within the scope of conduct prohibited by Section 1512(c)(2). ECF No. 43 at 2.  For the reasons set forth below, *Miller* was wrongly decided.

### 1.    Section 1512(c)(2)'s text, structure, and history confirm that its prohibition covers obstructive conduct unrelated to documentary evidence.

In Section 1512(c)(2), Congress prohibited conduct that intentionally and wrongfully obstructs official proceedings. The ordinary meaning of "obstruct[], influence[], or impede[]" encompasses a range of conduct designed to frustrate an official proceeding. That conduct can include lying to a grand jury or in civil proceedings, exposing the identity of an undercover agent, or burning a building to conceal the bodies of murder victims.  It also includes storming the Capitol to derail a congressional proceeding.  A defendant who, acting with the necessary *mens rea*, obstructs Congress's certification of the Electoral College vote, commits a crime under Section 1512(c)(2).

### A.    Section 1512(c)'s text and structure confirm that Section 1512(c)(2) is not limited to document-related obstructive conduct.

Section 1512(c)(2)'s plain text demonstrates that it prohibits any corrupt conduct that intentionally obstructs or impedes an official proceeding.  When interpreting a statute, courts look first to the statutory language, "giving the words used their ordinary meaning." *Lawson v. FMR LLC*, 571 U.S. 429, 440 (2014) (internal quotation marks omitted).  If the statutory language is

plain and unambiguous, this Court's "inquiry begins with the statutory text, and ends there as well." *National Ass'n of Mfrs. v. Department of Defense*, 138 S. Ct. 617, 631 (2018) (internal quotation marks omitted). Here, the meaning of "obstruct[], influence[], or impede[]" is controlled by the ordinary meaning of those words.

The verbs Congress selected in Section 1512(c)(2) are "noncontroversial." *Montgomery*, 2021 WL 6134591, at *10. The words "obstruct" and "impede" naturally "refer to anything that 'blocks,' 'makes difficult,' or 'hinders.'" *Marinello v. United States*, 138 S. Ct. 1101, 1106 (2018) (brackets omitted) (citing dictionaries). Similarly, "influence" includes "affect[ing] the condition of" or "hav[ing] an effect on." Influence, Oxford English Dictionary, available at http://www.oed.com. These verbs plainly apply to obstructive conduct that otherwise might not fall within the definition of document or evidence destruction. *See United States v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013). When read with Section 1512(c)(2)'s subject ("whoever") and object ("any official proceeding"), those verbs prohibit a defendant "from coming in the way of, blocking, or holding up the business conducted by an official body, such as a court or the Congress, when that body has formally convened for the purpose of conducting that business." *Montgomery*, 2021 WL 6134591, at *10.

Comparing the language in Section 1512(c)(1) to that in Section 1512(c)(2) confirms that the latter, unlike the former, is not a document-focused provision. Section 1512(c) consists of two provisions requiring the defendant to act "corruptly." Both contain a string of verbs followed by one or more direct objects. Section 1512(c)(1) applies to whoever corruptly "alters, destroys, mutilates, or conceals a record, document, or other object . . . with the intent to impair the object's integrity or availability for use in an official proceeding." The objects—"a record, document, or other object"—are static. In contrast, Section 1512(c)(2) applies to whoever corruptly "obstructs,

influences, or impedes any official proceeding."  The object—"proceeding"—is dynamic, and the verbs that precede it are all intended to change the movement or course of that "proceeding."  They are verbs that do not apply to a fixed "record" or "document" or an inanimate "object."  The two sections are related through their connection to an official proceeding: Section 1512(c)(1)'s verbs target forms of evidence tampering (e.g., altering, destroying mutilating) directed at the documents, records, and objects that are used in official proceedings, while Section 1512(c)(2)'s verbs take the proceeding itself as the object—thus prohibiting whatever conduct blocks or interferes with that proceeding without regard to whether that conduct involved documentary or tangible evidence.

Importing into Section 1512(c)(2) a nexus-to-documents requirement would not only require inserting an extratextual gloss, *see Dean v. United States*, 556 U.S. 568, 572 (2009) (courts "ordinarily resist reading words or elements into a statute that do not appear on its face") (internal quotation marks omitted), it would also render the verbs in Section 1512(c)(2) inapt.  The *actus reus* that the verbs in Section 1512(c)(2) encompass is obstructing, influencing, and impeding.  But "[h]ow [could] anyone [] alter, destroy, mutilate or conceal an 'official proceeding' or how [could] anyone [] 'obstruct[], influence[], or impede[]' 'a record, document, or other object'?" *Montgomery*, 2021 WL 6134591, at *14; *accord Fitzsimons*, 2022 WL 1698063, at *12; *cf. Yates v. United States*, 574 U.S. 528, 551 (2015) (Alito, J., concurring) (rejecting interpretation of "tangible object" in Section 1519 that would include a fish in part because of a mismatch between that potential object and the statutory verbs: "How does one make a false entry in a fish?"); *id.* at 544 (plurality opinion) ("It would be unnatural, for example, to describe a killer's act of wiping his fingerprints from a gun as 'falsifying' the murder weapon.").  Such a mismatch is all the more unlikely given how readily Congress could have drafted language that supplies a nexus to

documents in Section 1512(c)(2). *See Montgomery*, 2021 WL 6134591, at *12 (Congress could have enacted a prohibition that covers anyone who "'engages in conduct that otherwise impairs the integrity or availability of evidence or testimony for use in an official proceeding'").

The resemblance between the operative verbs in Section 1512(c)(2) and those Congress enacted in two other obstruction provisions, 18 U.S.C. §§ 1503(a) and 1505, demonstrates that Section 1512(c)(2) was designed to reach more than document-related obstructive conduct. Congress drafted the "omnibus clause" in Section 1503(a), which prohibits "corruptly . . . influenc[ing], obstruct[ing], or imped[ing] . . . the due administration of justice," to serve as a "catchall provision," *United States v. Aguilar*, 515 U.S. 593, 599 (1995), that criminalizes obstructive conduct that falls outside the narrower prohibitions within Section 1503(a) and neighboring provisions. *See, e.g., United States v. Sussman*, 709 F.3d 155, 168-70 (3d Cir. 2013) (removing gold coins from safe-deposit box); *United States v. Frank*, 354 F.3d 910, 916-19 (8th Cir. 2004) (removing car to avoid seizure); *United States v. Lefkowitz*, 125 F.3d 608, 619-20 (8th Cir. 1997) (instructing employee to remove documents from a house); *United States v. Lester*, 749 F.2d 1288, 1295 (9th Cir. 1984) (hiding a witness); *United States v. Brown*, 688 F.2d 596, 597-98 (9th Cir. 1982) (warning suspect about impending search warrant to prevent discovery of heroin). Section 1505, which prohibits "corruptly . . . influenc[ing], obstruct[ing], or imped[ing] . . . the due and proper administration of the law under which any pending proceeding is being had," has been construed to have a similar scope. *See, e.g., United States v. Vastardis*, 19 F. 4th 573, 587 (3d Cir. 2021) (manipulating an oil content meter to produce an inaccurate reading during a Coast Guard inspection and making a related false statement). Like Section 1512(c)(2), Sections 1503(a) and 1505 do not include "any limitation on the nature of the obstructive act other than that it must be committed 'corruptly,'" which "gives rise to 'a fair inference' that 'Congress intended [Section

1512(c)(2)] to have a [broad scope].'" *McHugh*, 2022 WL 1302880, at *10 (quoting *Miller*, 1:21-cr-119 (CJN), ECF No. 72 at 25).

Consistent with the interpretation that obstructive behavior may violate Section 1512(c)(2) even where the defendant does not "take[] some action with respect to a document," *Miller*, 1:21-cr-119 (CJN), 2022 WL 823070, at *10, courts of appeals have upheld convictions under Section 1512(c)(2) for defendants who attempted to secure a false alibi witness while in jail for having stolen a vehicle, *United States v. Petruk*, 781 F.3d 438, 440, 447 (8th Cir. 2015); disclosed the identity of an undercover federal agent to thwart a grand jury investigation, *United States v. Phillips*, 583 F.3d 1261, 1265 (10th Cir. 2009); lied in written responses to civil interrogatory questions about past misconduct while a police officer, *Burge*, 711 F.3d at 808-09; testified falsely before a grand jury, *United States v. Carson*, 560 F.3d 566, 584 (6th Cir. 2009); solicited information about a grand jury investigation from corrupt "local police officers," *United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014); and burned an apartment to conceal the bodies of two murder victims, *United States v. Cervantes*, No. 16-10508, 2021 WL 2666684, at *6 (9th Cir. June 29, 2021) (unpublished); *see also United States v. Martinez*, 862 F.3d 223, 238 (2d Cir. 2017) (police officer tipped off suspects before issuance or execution of search warrants), vacated on other grounds, 139 S. Ct. 2772 (2019); *United States v. Ahrensfield*, 698 F.3d 1310, 1324-26 (10th Cir. 2012) (law enforcement officer disclosed existence of undercover investigation to target).

Interpreted correctly, Section 1512(c)(2) applies to Defendant's conduct, which among other things, involved trespassing into the restricted Capitol area, engaging in disorderly conduct, assisting other rioters in preventing law officers from securing the East Rotunda door, and occupying one of the very places where the Electoral College vote would be certified, the Senate chamber.  In so doing, Defendant hindered and delayed an "official proceeding" before Congress.

*See* 18 U.S.C. § 1515(a)(1)(B).  Because construing Section 1512(c)(2) to reach such conduct would neither "frustrate Congress's clear intention" nor "yield patent absurdity," this Court's "obligation is to apply the statute as Congress wrote it."  *Hubbard v. United States*, 514 U.S. 695, 703 (1995) (internal quotation marks omitted).

**B.      The term "otherwise" reinforces that Section 1512(c)(2) covers obstructive conduct "other" than the document destruction covered in Section 1512(c)(1).**

The *Miller* Court's textual analysis overlooked Section 1512(c)(2)'s verbs and focused almost entirely on the term "otherwise."  But that term, properly interpreted, does not support such a narrowed interpretation of Section 1512(c)(2).

The term "otherwise" means "in another way" or "in any other way."  *Otherwise*, Oxford English Dictionary, available at http://www.oed.com. Consistent with its ordinary meaning, the term "otherwise" conveys that Section 1512(c)(2) encompasses misconduct that threatens an official proceeding "beyond [the] simple document destruction" that Section 1512(c)(1) proscribes. *Burge*, 711 F.3d at 809; *Petruk*, 781 F.3d at 446-47 (noting that "otherwise" in Section 1512(c)(2), understood to mean "in another manner" or "differently," implies that the obstruction prohibition applies "without regard to whether the action relates to documents or records") (internal quotation marks omitted); *United States v. Ring*, 628 F.Supp.2d 195, 224 n.17 (D.D.C. 2009) (noting that Section 1512(c)(2) is "plainly separate and independent of" Section 1512(c)(1), and declining to read "otherwise" in Section 1512(c)(2) "as limited by § 1512(c)(1)'s separate and independent prohibition on evidence-tampering");  *see also Gooch v. United States*, 297 U.S. 124, 126-28 (1936) (characterizing "otherwise" as a "broad term" and holding that a statutory prohibition on kidnapping "'for ransom or reward or otherwise'" is not limited by the words "ransom" and "reward" to kidnappings for pecuniary benefit); *Collazos v. United States*, 368 F.3d 190, 200 (2d Cir. 2004) (construing "otherwise" in 28 U.S.C. § 2466(a)(1)(C) to reach beyond the

"specific examples" listed in prior subsections, thereby covering the "myriad means that human ingenuity might devise to permit a person to avoid the jurisdiction of a court"). That reading follows inescapably from the text of Section 1512(c)'s two subsections read together: Section 1512(c)(1) "describes how a defendant can violate the statute by 'alter[ing], destroy[ing], mutilat[ing], or conceal[ing]' documents for use in an official proceeding," *Puma*, 2022 WL 823079, at *12, while "otherwise" in Section 1512(c)(2) "signals a shift in emphasis . . . from actions directed at evidence to actions directed at the official proceeding itself," *Montgomery*, 2021 WL 6134591, at *12 (internal quotation marks omitted).

In this way, Section 1512(c)(2) criminalizes the same result prohibited by Section 1512(c)(1)—obstruction of an official proceeding—when that result is accomplished by a different means, i.e., by conduct other than destruction of a document, record, or other object. *Cf. United States v. Howard*, 569 F.2d 1331, 1333 (5th Cir. 1978) (explaining that 18 U.S.C. § 1503(a), which criminalizes the result of obstructing the due administration of justice, provides specific means of accomplishing that result and then a separate catchall clause designed to capture other means). Section 1512(c)(2), in other words, "operates as a catch-all to cover otherwise obstructive behavior that might not constitute a more specific" obstruction offense involving documents or records under Section 1512(c)(1). *Petruk*, 781 F.3d at 447 (quoting *Volpendesto*, 746 F.3d at 286).

The *Miller* Court was mistaken in concluding that the interpretation above either "ignores" that "otherwise" is defined with reference to "something else," namely Section 1512(c)(1), or fails to "give meaning" to the term "otherwise." *Miller*, 1:21-cr-119 (CJN), 2022 WL 823070, at * 6-7.[4] Far from suggesting that Section 1512(c)(2) is "wholly untethered to" Section 1512(c)(1), *id.*,

---

[4] The *Miller* Court also was mistaken in characterizing this interpretation as a "clean break between subsections." *Miller*, 1:21-cr-119 (CJN), 2022 WL 823070, at * 6-7. Far from a "clean break," the term "otherwise" "connects the two clauses by clarifying that the obstructive acts in

"otherwise" as used in Section 1512(c)(2) indicates that Section 1512(c)(2) targets obstructive conduct in a manner "other" than the evidence tampering or document destruction that is covered in Section 1512(c)(1).  That understanding of "otherwise" is fully consistent with each definition the *Miller* Court surveyed, *see Miller*, 1:21-cr-119 (CJN), 2022 WL 823070, at * 6 (noting that "otherwise" in Section 1512(c)(2) may plausibly be read as "in a different way or manner; differently"; "in different circumstances: under other conditions"; or "in other respects") (internal quotation marks omitted), and does not render the term "pure surplusage," *id.*

Further, the *Miller* Court's reasoning that interpreting "otherwise" for purposes of Section 1512(c)(2) in the manner described above is "inconsistent" with *Begay v. United States*, 553 U.S. 137 (2008), where, in the Court's view, analysis of what "'otherwise' meant" was "[c]rucial" to the Supreme Court's decision. *Miller*, 1:21-cr-119 (CJN), 2022 WL 823070, at * 7, is respectfully flawed.

First, in considering whether driving under the influence was a "violent felony" for purposes of the Armed Career Criminal Act (ACCA)'s residual clause, which defines a "violent felony" as a felony that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury," 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added), the Supreme Court in *Begay* addressed a statutory provision that has an entirely different structure than Section 1512(c)(2).  *See Sandlin*, 2021 WL 5865006, at *6 (distinguishing *Begay* on the ground that, unlike the ACCA residual clause, the "otherwise" in Section 1512(c)(2) is "set off by both a semicolon and a line break").  Unlike in the ACCA residual clause, the "otherwise" phrase in Section 1512(c)(2) "stands alone, unaccompanied by

---

subsection (c)(2) must be different in some way from the evidence-related obstructive acts listed in (c)(1)." *Fitzsimons*, 2022 WL 1698063, at *7 n.7

any limiting examples."[5]   *Ring*, 628 F.Supp.2d at 224 n.17.   In other words, the "key feature" in

Section 924(e)(2)(B)(ii) at issue in *Begay*, "namely, the four example crimes," 553 U.S. at 147, is

"absent" in Section 1512(c)(2).   *Caldwell*, 2021 WL 6062718, at *14.   Although the Court

recognized the structural difference between the ACCA residual clause and Section 1512(c)(2),

*see Miller*, 1:21-cr-119 (CJN), 2022 WL 823070, at * 10-11, it offered no reason to import *Begay's*

interpretation of "otherwise" to Section 1512(c)(2)'s differently structured provision.

        In fact, Section 1512(c)(2) is a poor fit for application of the *ejusdem generis* canon that

*Begay* applied to the ACCA residual clause and that the Court functionally applied to Section

1512(c).   "Where a general term follows a list of specific terms, the rule of ejusdem generis limits

the general term as referring only to items of the same category."   *United States v. Espy*, 145 F.3d

1369, 1370-71 (D.C. Cir. 1998).   In *Yates*, for example, the plurality and concurring opinions

applied the ejusdem generis canon to interpret the word "tangible object" in 18 U.S.C. § 1519,

which makes it a crime to "knowingly alter[], destroy[], mutilate[], conceal[], cover[] up, falsif[y],

or make[] a false entry in any record, document, or tangible object with the intent to impede,

obstruct, or influence" an investigation.   *See* 574 U.S. at 545-56 (plurality opinion); id. at 549-50

(Alito, J., concurring).   But Section 1512(c)'s structure differs significantly: it includes one

numbered provision that prohibits evidence-tampering, followed by a semi-colon, the disjunctive

"or," and then a separately numbered provision containing the separate catchall obstruction

---

[5] The *Miller* Court suggested, 1:21-cr-119 (CJN), 2022 WL 823070, at * 8-9, that "[t]he government also presents an alternative reading" that Section 1512(c)(1) "provides examples of conduct that violates" Section 1512(c)(2).   *Id.* at * 8. That is incorrect.   Neither the Government nor Defendant here nor (to the Government's knowledge) any court has proposed or adopted that construction of Section 1512(c)(2).   Considering an interpretation that no party advocates and no court has adopted injects the kind of "front-end ambiguity" that "lead[s] to significant inconsistency, unpredictability, and unfairness in application."   *Wooden v. United States*, 142 S. Ct. 1063, 1076 (2022) (Kavanaugh, J., concurring).

prohibition.  "The absence of a list of specific items undercuts the inference embodied in ejusdem generis that Congress remained focused on the common attribute when it used the catchall phrase." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 225 (2008).  Furthermore, in the same way that the *ejusdem generis* canon does not apply to the omnibus clause in Section 1503 that is "one of . . . several distinct and independent prohibitions" rather than "a general or collective term following a list of specific items to which a particular statutory command is applicable," *Aguilar*, 515 U.S. at 615 (Scalia, J., concurring in part and dissenting in part), it has no application to Section 1512(c)(2), which embodies the same structure.  *Cf. Loughrin v. United States*, 573 U.S. 351, 359 (2014) (distinguishing the mail fraud statute (18 U.S.C. § 1341), which "contains two phrases strung together in a single, unbroken sentence," from the bank fraud statute (18 U.S.C. § 1344), which comprises "two clauses" with "separate numbers, line breaks before, between, and after them, and equivalent indentation—thus placing the clauses visually on an equal footing and indicating that they have separate meanings"); *see also McHugh*, 2022 WL 1302880, at *5 (explaining that the *ejusdem generis* canon on which *Miller* relied is "irrelevant" because rather than the "'A, B, C, or otherwise D'" structure found in the ACCA residual clause, Section 1512(c) "follows the form '(1) A, B, C, or D; or (2) otherwise E, F, or G'").

Second, describing the Supreme Court's interpretation of "what 'otherwise' meant" as "[c]rucial" (*Miller*, 1:21-cr-119 (CJN), 2022 WL 823070, at * 7) to that Court's decision in *Begay* is an inaccurate description of *Begay's* analysis.  The majority in *Begay* noted first that the "listed examples" in Section 924(e)(2)(B)(ii)—burglary, arson, extortion, or crimes involving explosives—indicated that the ACCA residual clause covered only similar crimes.  *Begay*, 553 U.S. at 142.  Those examples, the majority reasoned, demonstrated that Section 924(e)(2)(B)(ii) was not designed "to be all encompassing," but instead to cover only "crimes that are roughly

similar, in kind as well as in degree of risk posed, to the examples themselves." *Id.* at 142-43.  The majority next drew support for its conclusion from Section 924(e)(2)(B)(ii)'s history, which showed that Congress both opted for the specific examples in lieu of a "broad proposal" that would have covered offenses involving the substantial use of physical force and described Section 924(e)(2)(B)(ii) as intending to encompass crimes "similar" to the examples. *Id.* at 143-44.  In the final paragraph of that section of the opinion, the majority addressed "otherwise," noting that the majority "[could ]not agree" with the government's argument that "otherwise" is "sufficient to demonstrate that the examples do not limit the scope of the clause" because "the word 'otherwise' can (we do not say must . . .) refer to a crime that is similar to the listed examples in some respects but different in others." *Id.* at 144.

A tertiary rationale responding to a party's argument where the majority refrains from adopting a definitive view of "otherwise" cannot be described as "[c]rucial." The majority's "remarkably agnostic" discussion of "otherwise" in *Begay*, which explicitly noted that the word may carry a different meaning where (as here) the statutory text and context indicates otherwise, *Montgomery*, 2021 WL 6134591, at *11, suggests, if anything, that "the government's interpretation of 'otherwise' [in Section 1512(c)(2)] is the word's more natural reading," *McHugh*, 2022 WL 1302880, at *5 n.9; *see also Caldwell*, 2021 WL 6062718, at *14 (declining to depart from the "natural reading" of "otherwise" to mean "'in a different way or manner'" based on the discussion in *Begay*).  In short, the majority in *Begay* "placed little or no weight on the word 'otherwise' in resolving the case." *Montgomery*, 2021 WL 6134591, at *11.

Third, whatever the significance of the majority's interpretation of "otherwise" in *Begay*, *Begay's* holding and the subsequent interpretation of the ACCA residual clause demonstrate the central flaw with imposing an extratextual requirement within Section 1512(c)(2).  The Supreme

Court held in *Begay* that Section 924(e)(2)(B)(ii) encompasses only crimes that, similar to the listed examples, involve "purposeful, 'violent,' and 'aggressive' conduct."  553 U.S. at 144-45. But "*Begay* did not succeed in bringing clarity to the meaning of the residual clause."  *Johnson v. United States*, 576 U.S. 591, 600 (2015).  Just as the *Begay* majority "engraft[ed]" the "purposeful, violent, and aggressive conduct" requirement onto the ACCA's residual clause, 553 U.S. at 150 (Scalia, J., concurring in judgment) (internal quotation marks omitted), so too the Court in *Miller* engrafted onto Section 1512(c)(2) the requirement that a defendant "have taken some action with respect to a document, record, or other object" to obstruct an official proceeding, *Miller*, 1:21-cr-119 (CJN), 2022 WL 823070, at * 15.  In the nearly 20 years since Congress enacted Section 1512(c)(2), no reported cases have adopted the *Miller* Court's interpretation, and for good reason. That interpretation would give rise to unnecessarily complex questions about what sort of conduct qualifies as "tak[ing] some action with respect to a document" in order to obstruct an official proceeding.  *Cf. United States v. Singleton*, No. 06-cr-80, 2006 WL 1984467, at *3 (S.D. Tex. July 14, 2006) (unpublished) (concluding that Section 1512(c)(2) "require[s] some nexus to tangible evidence, though not necessarily tangible evidence already in existence"); *see also United States v. Hutcherson*, No. 05-cr-39, 2006 WL 270019, at *2 (W.D. Va. Feb. 3, 2006) (unpublished) (concluding that a violation of Section 1512(c)(2) requires proof that "an individual corruptly obstructs an official proceeding[] through his conduct in relation to a tangible object").[6]  In brief,

---

[6]  The *Miller* Court's interpretation of Section 1512(c)(2) resembles the reading given in *Singleton* and *Hutcherson*, both of which are unpublished and neither of which the *Miller* Court cited.  As noted in the main text, no other court, at least in a reported opinion, appears to have adopted the nexus-to-tangible-evidence-or-a-tangible-object standard articulated in *Singleton* and *Hutcherson*. *See United States v. De Bruhl-Daniels*, 491 F.Supp.3d 237, 250-51 (S.D. Tex. 2020) (identifying *Singleton* and *Hutcherson* as outliers from the "most popular—and increasingly prevalent—interpretation of § 1512(c)(2) [as] an unlimited prohibition on obstructive behavior that extends beyond merely tampering with tangible items"); *Ring*, 628 F.Supp.2d at 225 n.18 (disagreeing with

adopting the *Miller* Court's interpretation is likely to give rise to the very ambiguity it purported to avoid.

### C.        Tools of statutory interpretation do not support the *Miller* Court's narrowed interpretation.

Other tools of statutory construction reinforce the conclusion that Section 1512(c)(2) reaches conduct that obstructs or impedes an official proceeding in a manner other than through document destruction or evidence tampering.  In reaching a contrary conclusion, the *Miller* Court erred in several respects.

First, the *Miller* Court's suggested that reading Section 1512(c)(2) consistently with its plain language and structure as described above would "introduce something of an internal inconsistency" because Section 1512(c)(2) would have greater breadth than neighboring provisions in Section 1512.  *Miller*, 1:21-cr-119 (CJN), 2022 WL 823070, at * 12.  But the Court's description of Section 1512(c)(2) as an "elephant[] in [a] mousehole[]" because it is found "in a subsection of a subsection nestled in the middle of the statute," *id.*, or placed "unintuitive[ly]" in the "middle-back" of Section 1512, *Miller*, 1:21-cr-119 (CJN), 2022 WL 823070, at * 12, n.10, is inaccurate.  Section 1512 is comprised of two parts: four subsections that define criminal offenses (Sections 1512(a)-(d)), followed by six subsections that provide generally applicable definitions and clarifications (Sections 1512(e)-(j)).  Within the first part, three subsections (Sections 1512(a)-(c)) define criminal offenses with statutory maxima of at least 20 years, see §§ 1512(a)(3), (b)(3), (c), while Section 1512(d) carries a three-year statutory maximum, § 1512(d).  Within that structure, Congress sensibly placed Section 1512(c)(2) at the very end of the most serious—as measured by statutory maximum sentences—obstruction offenses, precisely where a "catchall" for

---

*Singleton* and *Hutcherson* but finding that the alleged conduct at issue in that case involved "some nexus to documents").  No court of appeals has cited either case.

obstructive conduct not covered by the more specific preceding provisions would be expected.  In any event, the "mousehole" canon provides that Congress "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions," *Whitman v. American Trucking Assns., Inc.*, 531 U.S. 457, 468 (2001), but it "has no relevance" where, as here, the statute in question was written in "broad terms," *Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731, 1753 (2020).

Second, the *Miller* Court is concerned that a reading of Section 1512(c)(2) that encompasses obstructive conduct unrelated to documents would give rise to "substantial superfluity problems." *Miller*, 1:21-cr-119 (CJN), 2022 WL 823070, at * 12.  But any overlap is "not uncommon in criminal statutes," *Loughrin*, 573 U.S. at 358 n.4, and Section 1512(c)(2)'s broader language effectuates its design as a backstop in the same way that a "generally phrased residual clause . . . serves as a catchall for matters not specifically contemplated." *Republic of Iraq v. Beaty*, 556 U.S. 848, 860 (2009).  Moreover, the "mere fact that two federal criminal statutes criminalize similar conduct says little about the scope of either."  *Pasquantino v. United States*, 544 U.S. 349, 358 n.4 (2005).

Any overlap between Section 1512(c)(2) and other provisions in Section 1512 has a "simple" explanation that does not warrant the Court's narrowing construction.  *McHugh*, 2022 WL 1302880, at *8. When Congress enacted the "direct obstruction" provision in Section 1512(c)(2), that provision necessarily included the "indirect obstruction prohibited" in the rest of Section 1512.  *Id.* Congress in Section 1512(c)(2) therefore did not "duplicate pre-existing provisions . . . but instead expanded the statute to include additional forms of obstructive conduct, necessarily creating overlap with the section's other, narrower prohibitions." *Id.*  Congress was not required to repeal those pre-existing prohibitions and rewrite Section 1512 "to create a single,

blanket obstruction offense" just to avoid overlap.  *Id.* at *9.  "Redundancies across statutes are not unusual events in drafting," *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992), and the "rule[] of thumb" that statutes should be interpreted to avoid superfluity necessarily yields to the "cardinal canon" that Congress "says in a statute what it means and means in a statute what it says there," *id.* at 253-54.  In other words, Section 1512(c)(2) "creates only explicable and indeed inevitable overlap rather than outright redundancy," such that the "purported superfluity" in Section 1512 "simply does not justify displacing the provision's ordinary meaning."  *McHugh*, 2022 WL 1302880, at *10.  That is particularly so here because even a "broad interpretation of § 1512(c)(2) does not entirely subsume numerous provisions within the chapter," and any overlap with other provisions in Section 1512 is "hardly remarkable."  *Sandlin*, 2021 WL 5865006, at *8; *accord United States v. Nordean,* No. CR 21-175 (TJK), 2021 WL 6134595, at *8 (D.D.C. Dec. 28, 2021).

Notably, the Court's interpretation injects a more troubling type of superfluity. By construing Section 1512(c)(2) to require "some action with respect to a document," *Miller***,** 1:21-cr-119 (CJN), ECF No. 72 at 28, risks rendering Section 1512(c)(2) itself superfluous in light of the "broad ban on evidence-spoliation" in Section 1512(c)(1).  *Yates*, 574 U.S. at 541 n.4 (plurality opinion) (internal quotation marks omitted); *cf. United States v. Poindexter*, 951 F.2d 369, 385 (D.C. Cir. 1991) (explaining that limiting the catchall provision in Section 1503(a)'s omnibus clause to obstructive acts "directed against individuals" would render the omnibus clause superfluous because "earlier, specific[] prohibitions" in Section 1503(a) "pretty well exhaust such possibilities") (internal quotation marks omitted).  The canon against surplusage is "strongest when an interpretation would render superfluous another part of the same statutory scheme."  *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013).  It is even stronger here, when it would render

superfluous "other provisions in the same enactment"—namely, the Sarbanes-Oxley Act. *Freytag v. Comm'r*, 501 U.S. 868, 877 (1991) (emphasis added; internal quotation marks omitted). At a minimum, the canon does not militate in favor of the Court's reading. *See United States v. Ali*, 718 F.3d 929, 938 (D.C. Cir. 2013) (canon against surplusage "'merely favors that interpretation which avoids surplusage,' not the construction substituting one instance of superfluous language for another").

Finally, an interpretation of Section 1512(c)(2) that imposes criminal liability only when an individual takes direct action "with respect to a document, record, or other object" to obstruct a qualifying proceeding leads to absurd results. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 69 (1994) (rejecting interpretation of a criminal statute that would "produce results that were not merely odd, but positively absurd"). That interpretation would appear, for example, not to encompass an individual who seeks to "obstruct[], influence[], or impede[]" a congressional proceeding by explicitly stating that he intends to stop the legislators from performing their constitutional and statutory duties to certify the Electoral College vote results by "drag[ging] lawmakers out of the Capitol by their heels with their heads hitting every step," *United States v. Reffitt*, No. 21-cr-32, ECF No. 119 at 20 (D.D.C. Mar. 7, 2022), and then leading a "mob and encourag[ing] it to charge toward federal officers, pushing them aside to break into the Capitol," *Id.* at 19-20, unless he also picked up a "document or record" related to the proceeding during that violent attack. The statutory text does not require such a counterintuitive result.

In short, if Congress in Section 1512(c)(2) endeavored to create the narrow document-focused provision that the Court envisioned, it "did a particularly poor job of drafting" because Congress would have "effectuated [its] intent in a way that is singularly susceptible to

misinterpretation, as evidenced by the overwhelming majority of judges who have construed § 1512(c)(2) broadly." *McHugh*, 2022 WL 1302880, at *11.

### D.     Legislative history does not support the Court's narrowed interpretation.

Because "the statutory language provides a clear answer," the construction of Section 1512(c)(2) "ends there," and resort to legislative history is unnecessary. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999). Regardless, the legislative history of Section 1512(c)(2)— particularly when considered alongside the history of Section 1512 more generally—does not support the *Miller* Court's interpretation of Section 1512(c)(2) for two reasons.

First, Section 1512(c) aimed at closing a "loophole" in Section 1512: the existing prohibitions did not adequately cover a defendant's personal obstructive conduct not aimed at another person. *See* 148 Cong. Rec. S6550 (statement of Sen. Hatch). To close that loophole, Section 1512(c)(1) criminalizes a defendant's firsthand destruction of evidence (without having to prove that the defendant induced another person to destroy evidence) in relation to an official proceeding, and Section 1512(c)(2) criminalizes a defendant's firsthand obstructive conduct that otherwise impedes or influences an official proceeding (though not necessarily through another person). *See Burge*, 711 F.3d at 809-10. The Court's limiting construction undermines Congress's efforts at loophole closing.

Second, no substantive inference is reasonably drawn from the fact that the title of Section 1512 does not precisely match the "broad proscription" it in fact contains, given that the Sarbanes-Oxley Act unequivocally and broadly entitled the new provisions now codified in Section 1512(c), "Tampering with a record or otherwise impeding an official proceeding." Pub. L. No. 107-204, § 1102, 116 Stat. 807 (capitalization altered). Section 1512's title is more limited simply because Congress did not amend the pre-existing title when it added the two prohibitions in Section 1512(c)

in 2002.  *Cf. Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R. Co.*, 331 U.S. 519, 528-29 (1947) (describing "the wise rule that the title of a statute and the heading of a section cannot limit the plain meaning of the text").

The *Miller* Court's conclusion, 1:21-cr-119 (CJN), 2022 WL 823070, at * 12-15, that Section 1512(c)'s historical development and legislative history counsel in favor of its narrowed interpretation of Section 1512(c)(2) lacks merit.  For example, the Court suggested that Congress would have had no reason to add Section 1512(a)(2)(B) three months after enacting Section 1512(c)(2) if the latter provision were construed broadly.  *Miller*, 1:21-cr-119 (CJN), 2022 WL 823070, at * 13-14.  Section 1512(a)(2)(B) prohibits the use or threatened use of physical force against "any person" with the intent to "cause or induce any person" to take one of four actions, including "alter[ing], destroy[ing], mutilat[ing], or conceal[ing] an object with intent to impair the integrity or availability of the object for use in an official proceeding."   18 U.S.C. § 1512(a)(2)(B)(ii).  But as noted above, unlike Section 1512(a)(2)(B), Section 1512(c) aimed generally to impose "direct" liability for obstructive conduct that was not directed at intimidating or influencing another person.   Understood in that light, Section 1512(a)(2)(B) operates harmoniously with both subsections in Section 1512(c): Section 1512(a)(2)(B)(ii) reaches a defendant's use of force or threatened use of force directed at another person in order to cause that person to destroy documents in connection with an official proceeding; Section 1512(c)(1) reaches a defendant's direct destruction of documents in connection with an official proceeding; and Section 1512(c)(2) reaches a defendant's non-document-related conduct that obstructs or impedes an official proceeding.  Moreover, to the extent Congress's enactment of Section 1512(a)(2)(B) just three months after the enactment of Section 1512(c) might tend to undermine the plain-language interpretation of Section 1512(c)(2), the fact that Section 1512(a)(2) was "written and

first approved" a year earlier than it was enacted—and therefore nine months before Section 1512(c)(2) was enacted—"somewhat undermines the inference" that the Court drew about Section 1512(c)(2)'s scope. *McHugh*, 2022 WL 1302880, at *9 n.17.

And while the legislators who enacted Section 1512(c) in the Sarbanes-Oxley Act undoubtedly had document shredding foremost in mind, "it is unlikely that Congress was concerned with only the type of document destruction at issue in the *Arthur Andersen* case." *Montgomery*, 2021 WL 6134591, at *16. In other words, "there is no reason to believe that Congress intended to fix that problem only with respect to 'the availability or integrity of evidence.'" *Id.* In addition, if the Court's narrow interpretation were correct, then certain floor statements, such as Senator Hatch's description of Section 1512(c)'s purpose to strengthen an obstruction offense "often used to prosecute *document shredding and other forms of obstruction of justice*," 148 Cong. Rec. S6550 (emphasis added), "would be quite strange." *McHugh*, 2022 WL 1302880, at *12.

> **E.   The *Miller* Court incorrectly applied the rule of lenity.**

Text, structure, history, and other tools of statutory interpretation unambiguously demonstrate that Section 1512(c)(2) prohibits any conduct that obstructs or impedes an official proceeding. Accordingly, the rule of lenity has no role to play, and the Court erred in concluding otherwise.

"When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." *Bell v. United States*, 349 U.S. 81, 83 (1955). That principle underlies the "venerable rule of lenity," *United States v. R.L.C.*, 503 U.S. 291, 305 (1992) (opinion of Souter, J.), which ensures that "legislatures and not courts" define criminal activity given the "seriousness of criminal penalties" and the fact that "criminal

punishment usually represents the moral condemnation of the community." *United States v. Bass*, 404 U.S. 336, 348 (1971); *see Liparota v. United States*, 471 U.S. 419, 427 (1985) ("Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability.").

The rule of lenity, however, does not come into play when a law merely contains some degree of ambiguity or is difficult to decipher. The rule of lenity "only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended." *Barber v. Thomas*, 560 U.S. 474, 488 (2010) (citation and internal quotation marks omitted); *Muscarello v. United States*, 524 U.S. 125, 138-39 (1998); *Young v. United States*, 943 F.3d 460, 464 (D.C. Cir. 2019).

In short, some ambiguity is insufficient to trigger the rule of lenity; instead, a court must find "grievous ambiguity" that would otherwise compel guesswork. *See Ocasio v. United States*, 578 U.S. 282, 295 n.8 (2016) (internal quotation marks omitted). "Properly applied, the rule of lenity therefore rarely if ever plays a role because, as in other contexts, 'hard interpretive conundrums, even relating to complex rules, can often be solved.'" *Wooden v. United States*, 142 S. Ct. 1063, 1075 (2022) (Kavanaugh, J., concurring) (quoting *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019)).

The *Miller* Court erroneously applied the rule of lenity in these cases. It referred to the "'grievous' ambiguity" standard when initially discussing the rule, *see Miller*, 1:21-cr-119 (CJN), 2022 WL 823070, at * 5, and found "a serious ambiguity" regarding the conduct that Section 1512(c)(2) reaches, *id.* at * 15. But as noted above, this interpretation of Section 1512(c)(2)'s scope places undue emphasis on a single word ("otherwise") and a single Supreme Court decision

(*Begay*) that interpreted that word in an entirely different statute and statutory context.  A proper reading of Section 1512(c)(2)'s text, context, structure, and history demonstrates that Section 1512(c)(2) prohibits any corrupt conduct that intentionally obstructs or impedes an official proceeding, not merely where a "defendant ha[s] taken some action with respect to a document, record, or other object," *Miller*, 1:21-cr-119 (CJN), 2022 WL 823070, at * 15, to corruptly obstruct an official proceeding.

Simply put, the rule of lenity is "inapplicable" here.  *Puma*, 2022 WL 823079, at *12 n.4. Congress made clear in Section 1512(c)(2) that it sought to protect the integrity of official proceedings—regardless of whether a defendant threatens such a proceeding by trying to interfere with the evidence before that tribunal or threatens the tribunal itself.  Any such distinction between these forms of obstruction produces the absurd result that a defendant who attempts to destroy a document being used or considered by a tribunal violates Section 1512(c) but a defendant who threatens those conducting that proceeding escapes criminal liability under the statute.  Not only does the rule of lenity not require such an outcome, but such an application loses sight of a core value that animates the lenity rule: that defendants should be put on notice that their conduct is criminal and not be surprised when prosecuted.  *See Wooden*, 142 S. Ct. at 1082 (Gorsuch, J., concurring) ("Lenity works to enforce the fair notice requirement by ensuring that an individual's liberty always prevails over ambiguous laws.").  It would strain credulity for any defendant who was focused on stopping an official proceeding through unlawful means to profess surprise that his conduct could fall within a statute that makes it a crime to "obstruct[], influence[], or impede[] any official proceeding, or attempt[] to do so."  18 U.S.C. § 1512(c)(2).  Confirming the absence of ambiguity—serious, grievous, or otherwise—is that despite Section 1512(c)(2)'s nearly 20-year existence, no other judge has found ambiguity in Section 1512(c)(2).

**F.      Even if Section 1512(c)(2) required that the obstructive act relate to documentary evidence, Defendant's conduct would be covered.**

Neither ordinary methods of statutory construction nor the rule of lenity supports limiting to Section 1512(c)(2) to document-based obstructive conduct. But even if Section 1512(c)(2) were so limited, it necessarily reaches beyond the direct evidence tampering already covered by Section 1512(c)(1) to include alternative ways of interfering with the consideration of documentary evidence—as happened here when the defendants impeded lawmakers' consideration of documents and records at the Electoral College vote certification proceeding.

At a minimum, Section 1512(c)(2) covers conduct that prevents the examination of documents, records, and other nontestimonial evidence in connection with an official proceeding. Even assuming a focus on documentary evidence, the additional conduct that it would cover beyond Section 1512(c)(1) would include, for example, corruptly blocking the vehicle carrying the Electoral College vote certificates to the Capitol for congressional examination at the certification proceeding, which would not "alter[], destroy[], mutilate[], or conceal[]" that evidence under 1512(c)(1), but would plainly "obstruct[]" or "impede[]" the proceeding with respect to that evidence under Section 1512(c)(2). For similar reasons, Section 1512(c)(2) would likewise cover blocking a bus carrying lawmakers to the Capitol to examine the certificates at the certification proceeding. And it just as readily covers displacing lawmakers from the House and Senate chambers, where they would examine and discuss those certificates and other records.

The Electoral College vote certification is rooted in constitutional and federal statutory law that requires the creation and consideration of various documents, and that certification operates through a deliberate and legally prescribed assessment of ballots, lists, certificates, and, potentially, written objections. Evidence at trial would show that Congress had before it boxes carried into the House chamber at the beginning of the Joint Session that contained "certificates of votes from

the electors of all 50 states plus the District of Columbia." *Reffitt*, No. 21-cr-32, ECF No. 119 at 28 (D.D.C. Mar. 7, 2022) (testimony of the general counsel to the Secretary of the United States Senate).  Evidence would further show that, as rioters began to breach the restricted area around the Capitol building and grounds on January 6, 2021, legislators were evacuated from the House and Senate chambers, and the staff for the Secretary of the United States Senate "took the ballot boxes and other paraphernalia of the proceeding" out of the chamber "to maintain custody of the ballots and make sure nothing happen[ed] to them." *Reffitt*, No. 21-cr-32, ECF No. 119 at 36 (D.D.C. Mar. 7, 2022).

Had Defendant sought to alter or destroy any of those documents, he would have violated Section 1512(c)(1).  Here, Defendant allegedly sought to stop Members of Congress from reviewing those constitutionally and statutorily mandated documents at a proceeding to certify the results of the 2020 presidential election.  Thus, even if a violation of Section 1512(c)(2) covered only obstructive behavior that prevents the consideration of documents, records, or other objects at an official proceeding, Defendant's alleged conduct—corruptly obstructing and impeding the examination of physical or documentary evidence at a congressional proceeding—states an offense.

### G.    Even under the *Miller* Court's narrowed interpretation of Section 1512(c)(2), dismissal in *Miller* was improper.

Even if the *Miller* Court's narrowed interpretation were correct, a dismissal of the indictment in Defendant's cases is premature.  An indictment satisfies the Federal Rules of Criminal Procedure if it contains "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1); *see United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976) (per curiam) (indictment need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed").  An

indictment complies with the Constitution where it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend" and enables a defendant "to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). An "indictment parroting the language of a federal criminal statute is often sufficient." *United States v. Resendiz-Ponce*, 549 U.S. 102, 109 (2007).

The Section 1512(c)(2) count in this case satisfies those requirements. The Section 1512(c)(2) count "echoes the operative statutory text"—alleging Defendant corruptly obstructed a congressional proceeding, namely, the certification proceeding, "while also specifying the time and place of the offense," namely, January 6, 2021, in the District of Columbia. *See United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018); *United States v. Edward Lang*, No. 21-cr-53 (CJN), ECF No. 36 at 5 (D.D.C. Sept. 15, 2022); *Miller*, 1:21-cr-119 (CJN), ECF No. 61 at 2-3, *United States v. Joseph Fischer*, 1:21-cr-234 (CJN), ECF No. 52 at 2. An indictment's validity does not turn on "whether it could have been made more definite and certain," especially where, as here, the indictment identifies conduct that occurred on a single day in connection with an infamous attack on the U.S. Capitol such that it is "inconceivable" that "the defendants could possibly be misled as to the offense with which they st[and] charged." *United States v. Debrow*, 346 U.S. 374, 376, 378 (1953) (internal quotation marks omitted). In that respect, the Section 1512(c)(2) count here does not resemble the charges in *United States v. Hillie*, 227 F.Supp.3d 57 (D.D.C. 2017), on which the *Miller* Court principally relied (*Miller*, 1:21-cr-119 (CJN), ECF 80 at 6, 11-12), and which involved allegations that the defendant merely "did something involving visual depictions of sexually explicit conduct of a minor . . . during periods of time that span two to three years," 227 F.Supp.3d at 72.

34

Even under the *Miller* Court's narrowed interpretation of Section 1512(c)(2), it would be error to dismiss the Section 1512(c)(2) count before trial.  Rule 12 permits a party to raise in a pretrial motion "any defense, objection, or request that the court can determine without a trial on the merits."  Fed. R. Crim. P. 12(b)(1) (emphasis added).  Rule 12 "does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds" unless the government "has made a full proffer of evidence," *United States v. Yakou*, 428 F.3d 241, 246-47 (D.C. Cir. 2005), which has not occurred here.  Indeed, "[i]f contested facts surrounding the commission of the offense would be of any assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial."  *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010).

Although Defendant styled his challenges to Section 1512(c)(2)'s scope as an attack on the indictment's validity, the scope of conduct covered under Section 1512(c)(2) is distinct from whether the Section 1512(c)(2) counts adequately stated a violation.  Here, the Section 1512(c)(2) counts put Defendant on notice as to the charges against which he must defend, while also encompassing both the broader theory that a defendant violates Section 1512(c)(2) through any corrupt conduct that obstructs an official proceeding and the narrower theory that a defendant must "have taken some action with respect to a document," *Miller*, 1:21-cr-119 (CJN), 2022 WL 823070, at * 15, in order to violate Section 1512(c)(2).  The *Miller* Court's conclusion that only the narrower theory is a viable basis for conviction should not result in dismissal; instead, the Court would properly enforce that limitation by permitting conviction on that basis alone.  *See United States v. Ali*, 885 F.Supp.2d 17, 33 (D.D.C. 2012) (limiting the government's aiding and abetting theory under 18 U.S.C. § 1651 to acts of piracy committed while the defendant was on the high seas but not dismissing the count), *reversed in part*, 718 F.3d 929 (D.C. Cir. 2013) (disagreeing

with the district court's limitation).  Critically, cases involving successful challenges by defendants concerning whether their conduct—and not merely the allegations against them—falls within the scope of the charged statute arise not under Rule 12 but following trials that establish the evidentiary record necessary to determine precisely what the defendant's conduct entailed.  *See, e.g., Marinello*, 138 S. Ct. at 1105 (considering scope of 26 U.S.C. § 7212(a) following defendant's conviction at trial); *Yates*, 574 U.S. at 534-35 (plurality opinion) (considering scope of the phrase "tangible object" in 18 U.S.C. § 1519 following defendant's conviction at trial); *Aguilar*, 515 U.S. at 597 (considering scope of omnibus clause in 18 U.S.C. § 1503(a) following the defendant's conviction at trial).

It is clear why that is so.  Even assuming the *Miller* Court's interpretation of Section 1512(c)(2) were correct, the Court cannot determine whether Defendant's conduct meets that test until after a trial, at which the Government is not limited to the Indictment's allegations.  And at trial, the Government could prove both that the certification proceeding involves lawmakers' consideration of certain documents and that Defendant "took" many "action[s]" with respect to Congress's consideration of those documents, thereby corruptly obstructing that certification proceeding.  In acting to thwart the commencement and operation of an official proceeding that involved such documents, the evidence would establish that Defendant violated Section 1512(c)(2) even under an interpretation of Section 1512(c)(2) that requires that a defendant took "some action with respect to a document, record, or other object in order to corruptly obstruct, impede[,] or influence Congress's certification of the electoral vote," *Miller*, 1:21-cr-119 (CJN), 2022 WL 823070, at * 15.

**II.**        **COUNT SIX OF THE INDICTMENT IS CONSTITUTIONAL**

Lastly, Defendant claims Count Six of the Indictment violates the Fifth and Sixth Amendments to the U.S. Constitution.   ECF No. 43 at 1.  The Due Process Clauses of the Fifth and Fourteenth Amendments prohibit the Government from depriving any person of "life, liberty, or property, without due process of law."  U.S. Const. amends. V, XIV.  The Sixth Amendment provides that in criminal prosecutions an accused has a right to "a speedy and public trial," before an impartial jury where the crime was committed, "to be informed about the nature and cause of the accusation," the right to confront witnesses, to compel the appearance of witnesses in his favor, and a right to counsel.  U.S. Const. amends. VI.

Defendant's constitutional claims lack merit because his bare allegations are not supported by any argument or controlling authority that establishes Section 1512(c)(2) violates the Fifth or Sixth Amendments.   Although, *Miller,* upon which Defendant based his motion to dismiss references that defendant's narrow Fifth Amendment claim that the *mens rea* requirement to violate Section 1512– the term "corruptly" in the statute –was unconstitutionally vague, *Miller*, 1:21-cr-119 (CJN), 2022 WL 823070 at \*4, the *Miller* Court did not rule on Section 1512(c)(2)'s constitutionality.

To the extent Defendant asserts the unaddressed constitutional vagueness claim referenced in *Miller*, the assertion is meritless.  An outgrowth of the Due Process Clause, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement."  *Johnson v. United States*, 576 U.S. 591, 595 (2015). To ensure fair notice, "'[g]enerally, a legislature need do nothing more than enact and publish the law and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply.'"  *United*

*States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (quoting *Texaco, Inc. v. Short*, 454 U.S. 516, 532 (1982)). To avoid arbitrary enforcement, the law must not "vest[] virtually complete discretion" in the government "to determine whether the suspect has [violated] the statute." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983).

A statute is not unconstitutionally vague simply because its applicability is unclear at the margins, *United States v. Williams*, 553 U.S. 285, 306 (2008), or because a reasonable jurist might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010). "'Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid.'" *Bronstein,* 849 F.3d at 1107 (quoting *Rose v. Locke*, 423 U.S. 48, 50 (1975) (per curiam)). A provision is impermissibly vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application. *Williams*, 553 U.S. at 306; *see Smith v. Goguen*, 415 U.S. 566, 578 (1974). The "touchstone" of vagueness analysis "is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 267 (1997).

In relying on *Miller*, Defendant fails to overcome the "strong presumpti[on]" that Section 1512(c)(2) is constitutional. *See United States v. Nat'l Dairy Products Corp*., 372 U.S. 29, 32 (1963). Section 1512(c)(2) does not tie criminal culpability to "wholly subjective" terms such as "annoying" or "indecent" that are bereft of "narrowing context" or "settled legal meanings," *Williams*, 553 U.S. at 306, nor does it require application of a legal standard to an "idealized ordinary case of the crime," *Johnson*, 576 U.S. at 604. Section 1512(c)(2)'s prohibition on "corruptly … obstruct[ing], influenc[ing], or imped[ing]" an "official proceeding" gives rise to

"no such indeterminacy." *Williams*, 553 U.S. at 306.  The statute requires that a defendant, acting with consciousness of wrongdoing and intent to obstruct, attempts to or does undermine or interfere with a statutorily defined official proceeding.  While "it may be difficult in some cases to determine whether these clear requirements have been met," "'courts and juries everyday pass upon knowledge, belief and intent – the state of men's minds – having before them no more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred.'"  *Id.* (quoting *American Communications Ass'n, CIO v. Douds*, 339 U.S. 382, 411 (1950)).

The claim asserted by the defendant in *Miller* (but not reached by the *Miller* Court) that the word "corruptly" in Section 1512(c)(2) is unconstitutionally vague fails.  As Judge Friedman recently observed, "[j]udges in this district have construed 'corruptly' to require 'a showing of "dishonesty" or an 'improper purpose'[;], 'consciousness of wrongdoing'[;] or conduct that is 'independently criminal,' 'inherently malign, and committed with the intent to obstruct an official proceeding.'"  *Puma,* 2022 WL 823079, at *10 (quoting *Montgomery*, 2021 WL 6134591, at *19; *United States v. Bozell*, 21-cr-216, 2022 WL 474144, at *6 (D.D.C. Feb. 16, 2022); *Caldwell*, 2021 WL 6062718, at *11; and *Sandlin*, 2021 WL 5865006, at *13) (alterations omitted).  Under any of these common-sense constructions, the term "corruptly" "not only clearly identifies the conduct it punishes; it also 'acts to shield those who engage in lawful, innocent conduct – even when done with the intent to obstruct, impede, or influence the official proceeding.'"  *Id.* (quoting *Sandlin*, 2021 WL 5865006, at *13).  It presents no vagueness concern.

Nor does *Poindexter* support an attack on the word "corruptly," for at least three reasons.  First, the D.C. Circuit narrowly confined *Poindexter's* analysis to Section 1505's use of "corruptly," and expressly declined to hold "that term unconstitutionally vague as applied to all

conduct." 951 F.2d at 385.  Five years later, in *United States v. Morrison*, 98 F.3d 619 (D.C. Cir.

1996), the D.C. Circuit rejected a *Poindexter*-based vagueness challenge to 18 U.S.C. § 1512(b)

and affirmed the conviction of a defendant for "corruptly" influencing the testimony of a potential

witness at trial. *Id.* at 629-30.  Other courts have similarly recognized "the narrow reasoning used

in Poindexter" and "cabined that vagueness holding to its unusual circumstances."  *United States*

*v. Edwards*, 869 F.3d 490, 502 (7th Cir. 2017); *see also, e.g., United States v. Kelly*, 147 F.3d 172,

176 (2d Cir. 1998) (rejecting vagueness challenge to "corruptly" in 26 U.S.C. § 7212(a)); *United*

*States v. Shotts*, 145 F.3d 1289, 1300 (11th Cir. 1998) (same for 18 U.S.C. § 1512(b)); *United*

*States v. Brenson*, 104 F.3d 1267, 1280 (11th Cir. 1997) (same for 18 U.S.C. § 1503).

Second, *Poindexter* predated the Supreme Court's decision in *Arthur Andersen LLP v.*

*United States*, 544 U.S. 696 (2005). There, the Court explained the terms "'[c]orrupt" and

'corruptly' are normally associated with wrongful, immoral, depraved, or evil." *Id.* at 705 (citation

omitted). In doing so, the Court "did not imply that the term was too vague." *Edwards*, 869 F.3d

at 502. Third, and as noted above, courts have encountered little difficulty when addressing

"corruptly" in Section 1512(c)(2) following *Arthur Andersen*. *See Puma*, 2022 WL 823079, at *10

(quoting *Montgomery*, 2021 WL 6134591, at *19; *Bozell*, 2022 WL 474144, at *6; *Caldwell*, 2021

WL 6062718, at *11; and *Sandlin*, 2021 WL 5865006, at *13) (alterations omitted).  Such efforts

demonstrate that the statute's "corruptly" element does not invite arbitrary or wholly subjective

application by either courts or juries.

## <u>CONCLUSION</u>

For the foregoing reasons, the government respectfully submits that Defendant's motion to dismiss Count Six should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:      */s/ Michael G. James*
MICHAEL G. JAMES
Assistant United States Attorney
N.Y. Reg. No. 2481414
Office of the United States Attorney
Eastern District of North Carolina
(on detail to the USAO-DC)
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Mike.James@usdoj.gov
Telephone: (919) 856-4530