# EXHIBIT 1

**Sam Patten**



**Bath, Maine 04530**

June 1, 2023

The Honorable Christopher R. Cooper
District Judge
United States District Court for the
District of Columbia
333 Constitution Avenue N. W.
Washington, DC 20001

    Re: United States vs. Noah Bacon
       (Docket No. 1:21-mj-00509)

Dear Judge Cooper:

Noah Bacon is my first cousin, the eldest child of my mother's youngest brother, Robert and his wife Sonia. I've known him all his life, and am writing you as you prepare to sentence him for the crimes for which he has been convicted.

Because of the counts that occasion this moment, Noah is the second felon in our family and I am the first. In 2018, I pleaded guilty before the Hon. Amy Berman Jackson for failing to register as a foreign agent in charges referred to by then special counsel Robert Mueller. Accordingly, I am doubly sorry for what Noah and his family are going through now.

Based on his journey in young adulthood so far, it seems to me that Noah is a seeker. Our late grandmother beamed when she told me just before her death that she felt he had connected with her Hospice companion. His pursuit of yoga and meditation has taken him across the country and he has been looking for the path to follow.

Until the news broke about his arrest, I was unaware that Noah was a Trump supporter – in fact I was quite surprised. We have one uncle who supported Trump, but the rest of our family has always been very liberal. (Even though I am more conservative and was convicted in a Trump-related investigation, I voted against Trump twice, and the record will reflect that Rick Gates and I are the only ones in that episode he did not pardon – most likely because we were the only ones who cooperated in good faith with the Justice Department.)

The events that drew Noah to Washington on January 6th coincided with a young man seeking a purpose, which is a feeling I myself knew not so long ago. Based on his account, he was swept up in the crowd. When he got inside the Capitol, he went

to meditate in the visitors' gallery of the Senate chamber, as I understand. Allowing himself to get into the proximity of a violent mob was bad judgment on his part. Perhaps he shouldn't have gone to trial, but he did not believe the charges fairly represented his actions that day. Regardless, he now stands at what may be one of the most precarious moments of his life.

As a justice ambassador for Prison Fellowship, I have come to appreciate the power of restorative justice. Beyond religious belief alone, there is something about second chances that is central to the American spirit. My own experiences inform my thinking on this. Not only am I a law-breaker, in the FARA instance, but I am also a victim of crime. In November 2020, a man stabbed me eight times at the intersection of Florida Ave. and 14th St., NW in broad daylight. His intent appears to have been to decapitate me, but fortunately for me he was unable to finish the job.

Metro DC police arrested my assailant and today he is serving a 72-month sentence, having taken a plea for assault with a dangerous weapon. When I wrote to his sentencing judge, I stressed my willingness to forgive if the convicted took responsibility for the attack. After all, this is at the core of restorative justice and what better opportunity to practice what one preaches? Sadly, my assailant did not own his crime, which, while he admitted committing, he claimed he did not remember. Ownership – or the lack of it – is the first step of the healing process for all sides in the restorative justice equation.

Noah does not deny his crimes, and has expressed remorse. As a felon myself for a non-violent offense, I know how difficult life after serving one's sentence continues to be. Today I work as a line cook, a bus driver, and a guest room cleaner while I seek employment closer to my talents that once put me near the top of my profession (I used to advise national leaders around the world). It is a humbling and potentially devastating brand to bear.

In the former Soviet Union, where I spent a substantial amount of time, people distinguish between "political" crimes and anti-social ones. This is probably because of a learned distrust of the state on meeting out justice. In America, we do not discriminate. A criminal is a criminal. One reason we have been able to afford this distinction is because people trust judges to demonstrate fairness and, when deserved, mercy. When I think about the future trajectory of Noah's life, now is the time when mercy might have the biggest impact.

Thank you for your consideration of my letter.

Very truly yours,

Sam Patten

Sam Patten